**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **RAYMUNDO HUERTA, a.k.a. Eleazar Arellano Rubio,[1] ID # 1162021,** ) )  | |
| Petitioner, ) | |
| vs. ) | No. 3:07-CV-2174-L-BH |
| ) | |
| **NATHANIEL QUARTERMAN, Director,** ) | Referred to U.S. Magistrate Judge |
| **Texas Department of Criminal** ) | |
| **Justice, Correctional Institutions Division,** ) | |
| Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the Court, this case has been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

**I. BACKGROUND**

**A. Factual History**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his conviction for murder in Cause No. F02-02065-MW. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

On December 9, 2002, the State indicted petitioner for a murder that occurred on or about July 5, 1995. CR[2] at 2 (indictment). At trial, the State primarily relied upon testimony from an eyewitness and law enforcement personnel who investigated the crime. *See* Rep.'s R., Vol. IV at 1, 21-213 [hereinafter cited as RR-volume # at page]; RR-V at 5-21. Petitioner testified in his own

---

[1] The State records provided in this case reveal the alias. For record keeping purposes, the Clerk of the Court shall note the alias on the docket of this action.

[2] "CR" refers to the Clerk's Record in Cause No. F02-02065-MW.

defense to substantially the same facts as the eyewitness but identified another shooter. *See* RR-V 24-69. No physical evidence connected petitioner to the murder. *See* W.H.[3] at 18.

      The eyewitness testified that on the night of July 4, 1995, he, the victim, and Nerry Mesquita (Mesquita) drove to the Garibaldi Club (Garibaldi's or the club). RR-IV at 62-64. Mesquita stayed in the vehicle while the eyewitness and victim went inside. *Id.* at 65-66. The eyewitness had consumed three or four beers over approximately ninety minutes when the victim began arguing with another patron. *Id.* at 66-68. Petitioner left the club during the argument, returned with a gun, and shot the victim. *Id.* at 70-72. At that point, everyone scattered. *Id.* at 72-73. The eyewitness testified that approximately fifteen days after the murder, he viewed some photos and thought he saw one that might depict the shooter but was unsure. *See id.* at 76-77, 88-89, 101. He positively identified petitioner as the shooter in court and testified that his in-court identification was based on his memory of the night of the murder. *Id.* at 77-78, 100-01.

      Dallas Police Officer Steven Jankowski testified that he responded to an anonymous 911 call and found the victim dead outside Garibaldi's at approximately 2:40 a.m. on July 5, 1995. RR-IV at 22-24. Officers found no one inside the club. *Id.* at 30. Officer Jankowski testified that an hour or so later, a witness named Mesquita informed officers that he, the victim, and the eyewitness arrived at the club together. *Id.* at 34-36. Mesquita led investigators to the eyewitness. *Id.* at 36, 119. On July 5, 1995, the eyewitness gave a detailed description of the shooter but could not otherwise identify him. *Id.* at 46, 75, 120. Investigators also determined that Alejandra Luna (Luna) worked as a bartender at the club on the night of the murder. *Id.* at 40, 120. Luna merely described the shooter as a "Hispanic male" and confirmed that the shooting was preceded by a verbal

---

[3] "W.H." refers to the transcript of the writ hearing held on April 11, 2006.

2

argument. *Id.* at 46, 55. The two witnesses provided insufficient information to enable investigators to generate a photo lineup. *Id.* at 56, 122.

During the investigation, law enforcement personnel raided Garibaldi's on September 22, 1995, in part because investigators could locate no other witnesses to the murder. *Id.* at 124, RR-V at 6-7. A week before the raid, investigators received an anonymous tip of a nickname for the shooter. RR-IV at 125. As a result of the raid, several individuals were taken into custody as undocumented aliens or for liquor license violations. *Id.* at 127-28. The lead investigator on the murder case, John Davison, testified that interviews subsequent to the raid connected "Raymundo Huerta" to the newly learned nickname. *Id.* at 130, 132, 135. According to Davison, Luna recognized the nickname but connected no name with it. *Id.* at 131-32. Davison further testified that petitioner's brothers, Gaspar Sierra[4] (Sierra) and Edith Rubio (Rubio) were picked up in the raid. *Id.* at 132, 135-36.

After learning the name associated with the nickname, investigators obtained a 1993 photo of petitioner and assembled a six-photo lineup on September 23, 1995. *Id.* at 136-38. Davison testified that Luna was able to point out the shooter from that lineup that day. *Id.* at 138-39. He also testified that the eyewitness viewed the lineup "several days later" for "about a minute" but was unable to identify the shooter, and he seemed distracted and nervous or scared. *Id.* at 143-44, 153.

The murder investigation stalled until November 11, 1996, when the State arrested petitioner for murder after responding to a disturbance call by his girlfriend, Rosa Cedillo (Cedillo). *Id.* at 150-51, 177, 188-89, 202-03. During a post-arrest interview, petitioner initially denied knowing about any murder at Garibaldi's, denied that he was Raymundo Huerta, and provided documentation

---

[4] The record also refers to this individual as Sierra Gaspar. *See* RR-IV at 130-32.

3

showing that he was Francisco Javier Cuevas Garcia. *Id.* at 181-83 (testimony of Officer Armando Perez). However, he conceded that he was Raymundo Huerta after being shown a driver's license with his picture and that name and being informed that he would soon be fingerprinted to determine his true identity. *Id.* at 183-84. He continued to deny knowledge of the murder until he was informed that witnesses had placed him at the crime scene. *Id.* at 184. He then admitted to being there but stated that Victor had shot someone that night. *Id.* The following written, voluntary statement given after the interview about the events was admitted into evidence:

> I was at the Garibaldi Club with my friend Victor. I was playing pool when there was a fight at the bar. Victor was the one that shot the dead man. I saw Victor with an automatic. I saw Victor when he shot the man. There were a lot of shots. Victor got out of the club and I got out and left. I did have a gun, but I did not fire it. The gun was a 9mm.

*Id.* at 185-86; RR-VIII at 54 (State's Ex. 112-A).

Officer Perez testified that he obtained a statement from Cedillo on November 17, 1996, about what petitioner had told her of the July 1995 shooting at Garibaldi's. RR-IV at 188-90. He testified that her statement was consistent with petitioner being a suspect. *Id.* at 190. Officer Perez also testified that a few weeks before the March 2003 trial, the eyewitness identified petitioner as the shooter from Davison's six-photo lineup. *Id.* at 192-95.

The State also presented evidence that on March 21, 1997, petitioner was released on $250,000 bond. *See* RR-VIII at 57 (State's Ex. 115). On September 24, 1999, he failed to appear for trial, and the trial court issued a warrant for his arrest. *Id.* On February 6, 2002, the United States Border Patrol arrested petitioner; he identified himself as Pedro Vasquez Reyes at that time. RR-V at 14-15.

Petitioner testified that he was at Garibaldi's on the night in question when an acquaintance

4

named Victor arrived with four or five people. RR-V at 27-28. He later saw Victor and another man arguing with the victim. *Id.* at 29. During the argument, Victor went outside, returned with a gun, and shot the victim. *Id.* at 29-30. At that point, everyone dropped to the ground and Victor and his friends left. *Id.* at 30-31. Petitioner denied using a nickname. *Id.* at 55. He also denied confessing to Cedillo that he shot a man at Garibaldi's. *Id.* at 59.

After considering the testimony and other evidence admitted at trial, a jury found petitioner guilty as charged in the indictment on March 18, 2003. RR-V at 108. The next day, punishment was assessed at ninety-nine years imprisonment, and the trial court sentenced petitioner accordingly. *See* RR-VI at 36-37.

**B. State Post-conviction Proceedings**

On March 16, 2004, the court of appeals affirmed the conviction and overruled three points of error based on the admission of hearsay because trial counsel had failed to preserve the alleged errors with a timely objection. *Huerta v. State*, No. 05-03-00585-CR, slip op. 1-2 (Tex. App. – Dallas Mar. 16, 2004, pet. ref'd). On January 12, 2005, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (Pet. Writ of Habeas Corpus (Pet.) at 3.)

On February 16, 2006, petitioner filed a state application for writ of habeas corpus. S.H. Tr.[5] at 2. He asserted that his attorney rendered ineffective assistance of counsel when he repeatedly failed to object or make proper objection to inadmissible hearsay and failed to conduct an adequate investigation into the basis for the eyewitness's identification or present expert testimony regarding eyewitness testimony. *Id.* at 7, 10-11. He also asserted that counsel's failures to object violated his constitutional right to confront the witnesses against him. *Id.* at 10. On April 11, 2006, a state

---

[5] "S.H. Tr." denotes the state habeas records in this case.

magistrate conducted an evidentiary hearing on the state habeas application and heard testimony from an eyewitness expert, Roy Malpass (Malpass); petitioner's trial attorney, James Vasilas (Vasilas); and a board certified criminal defense attorney, Scott Brown. W.H. at 1-77.

On August 15, 2007, the habeas court found that the eyewitness tentatively identified petitioner "from the photo lineup two weeks after the murder"; positively identified him eight years later; and in the interim, "was shown the photo lineup on several occasions when talking to the detective and/or the prosecutor". Supp. S.H. Tr.[6] at 3. Based on those facts and expert testimony that the facts supported the presentation of expert testimony at trial to educate the jury about misidentification, attack the eyewitness identification and show that memory diminished over time, the court concluded that the failure to consult with an expert was not a matter of trial strategy. *Id.* It also found that investigating and arresting officers repeatedly responded to questioning at trial "with hearsay statements based upon their interviews or discussions" with Luna, Sierra, Rubio, Cedilla, and the unidentified caller who gave them the shooter's nickname, and that counsel either did not object to the hearsay evidence or objected too late to preserve error. *Id.* at 3-4. The court concluded that counsel rendered deficient representation and that "the result of the proceeding would have differed" absent such deficiencies. *Id.* at 4. It therefore recommended that petitioner's state application for writ of habeas corpus be granted. *Id.*

Notwithstanding that recommendation, the Texas Court of Criminal Appeals denied petitioner's application by written order on November 21, 2007. *Ex parte Huerta*, No. 65,324-01, 2007 WL 4139233, at *5 (Tex. Crim. App. Nov. 21, 2007) (per curiam). It specifically disagreed with the conclusion that counsel rendered deficient representation. *Id.*

---

[6] "Supp. S.H. Tr." refers to the supplemental state habeas records.

## C. Federal Habeas

On December 28, 2007, petitioner filed a petition for federal habeas relief and a supporting memorandum through retained counsel. (*See* Pet. at 1, 16; Mem. Supp. at 1, 39.) He alleges that he received ineffective assistance of trial counsel when his attorney failed to object or make a proper objection to inadmissible hearsay and failed to conduct an adequate factual investigation of the eyewitness's identification and either consult with an eyewitness expert or present expert testimony.[7] (*See* Pet. at 6, 8, and attached page; Mem. Supp. at 7-8.) Respondent answered and provided the state-court records. (*See* Resp. Quarterman's Answer, hereinafter Answer.) Petitioner filed a rebuttal to the answer. (*See* Huerta's Rebuttal to State's Answer, hereinafter referred to as Reply.)

Respondent concedes that petitioner has sufficiently exhausted his state remedies with respect to the first two claims raised in the instant petition. (Answer at 9-10.)

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[7] Petitioner does not pursue his state claim that counsel's failures to object violated his constitutional right to confront the witnesses against him.

>Supreme Court of the United States; or

>>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). Because petitioner's claims were considered on the merits through the state habeas process, *see Ex parte Huerta*, No. 65,324-01, 2007 WL 4139233, at *5 (Tex. Crim. App. Nov. 21, 2007) (per curiam), the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Absent such a direct conflict with Supreme Court authority, habeas relief is only available if a state court decision is unreasonable." *Smith v. Quarterman*, 515 F.3d 392, 399 (5th Cir. 2008). *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'un-

8

reasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption "applies to explicit findings of fact and to 'those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" *Williams v. Quarterman*, 551 F.3d 352, 358 (5th Cir. 2008) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).[8]

Whether examining reasonableness under § 2254(d)(1) or (2), the inquiry "should be objective rather than subjective." *Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004). Except when a state decision is contrary to Supreme Court precedent, federal habeas relief is warranted under the AEDPA standards only when "the state court decision is both incorrect *and* objectively unreason-

---

[8] The parties disagree on the application of AEDPA's presumption of correctness in this case. (*Compare* Answer at 10-15 *with* Mem. Supp. at 28-30; Reply at 2-6.) Where the state appellate court does not reject the factual findings of the state trial court but finds that those factual findings do not entitle a petitioner to relief, the trial court findings are still entitled to a presumption of correctness. *Craker v. Procunier*, 756 F.2d 1212, 1213-14 (5th Cir. 1985); *Williams*, 551 F.3d at 358. "[A] state habeas trial court's factual findings do not survive review by the Texas Court of Criminal Appeals where they were neither adopted nor incorporated into the appellate court's peremptory denial of relief, but instead were directly inconsistent with the appellate court's decision," however. *Williams*, 551 F.3d at 358; *accord Micheaux v. Collins*, 944 F.2d 231, 232 (5th Cir. 1991) (en banc) (per curiam). Here, the Texas Court of Criminal Appeals appears to have accepted some factual findings of the trial court while implicitly rejecting others.

able." *Id.*; *accord Smith*, 515 F.3d at 399. When the state court "reaches a 'satisfactory conclusion'", federal habeas relief is not warranted. *Morrow*, 367 F.3d at 313 (quoting *Williams*, 529 U.S. at 410-11).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner alleges that his trial attorney rendered ineffective assistance by failing to object or make proper objection to inadmissible hearsay or to investigate the eyewitness's testimony and to either consult or present an identification expert. (*See* Pet. at 6, 8, and attached page.)

The Sixth Amendment provides criminal defendants a right to effective assistance of counsel during trial. U.S. Const., art. VI. To successfully state a claim of ineffective assistance of counsel under existing Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Strickland*, 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at

10

694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

**A.  <u>Objections to Hearsay Testimony</u>**

Here, the Texas Court of Criminal Appeals concluded that counsel did not render ineffective assistance for his handling of hearsay evidence at trial because the decision to make individual objections to hearsay rather than a running objection based on hearsay was a matter of trial strategy. *See Ex parte Huerta*, No. 65,324-01, 2007 WL 4139233, at *4-5 (Tex. Crim. App. Nov. 21, 2007) (per curiam). It ultimately concluded that counsel's failures to object to hearsay did not equate to deficient representation when similar objections were lodged, the objections were sustained at times but overruled at other times, and the attorney would ultimately accede to the court's rulings even if the attorney believed the ruling to be incorrect. *See id.*

This Court cannot disturb the factual finding related to counsel's trial strategy in the absence of clear and convincing evidence. *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999); 28 U.S.C. § 2254(e). The reasonableness of counsel's trial strategy, however, is a question of law that is not entitled to deference. *Moore*, 194 F.3d at 604. Even when an attorney has chosen a strategic path to conduct the trial, his choice may constitute constitutionally ineffective assistance if the strategy "is so ill chosen that it permeates the entire trial with obvious unfairness." *United States v. Rusmisel*, 716 F.2d 301, 310 (5th Cir. 1983).

This Court need not definitively decide whether counsel's failures to object to hearsay constitute a deficiency of counsel within the meaning of *Strickland* because even assuming deficiency for purposes of this petition, petitioner has not demonstrated prejudice. He has not shown a reasonable probability that the outcome of his trial would have been different but for the failure to object. The admission of the hearsay testimony does not undermine confidence in the verdict or render the result of the trial unreliable or the proceeding fundamentally unfair because the jury also heard non-hearsay testimony from the eyewitness that petitioner was the shooter and from investigators about petitioner's changed version of the events once he discovered witnesses had placed him at the scene. Non-hearsay evidence was also presented that petitioner skipped bond and avoided trial for a number of years before being apprehended coming back into the United States under a false name.[9] The jury heard also petitioner's version of the events but discredited it.

Petitioner argues that prejudice is not in dispute because the Texas Court of Criminal Appeals did not disturb the trial court's conclusion that he was prejudiced by the failures of counsel regarding the admission of hearsay evidence at trial. (Reply at 2-3.) Although the habeas court concluded in its recommendation "that absent trial counsel's errors, the result of the proceeding would have differed", there was no significant analysis of prejudice. *See* Supp. S.H. Tr. at 1-5. The

---

[9] Although this case shares many similarities with *Taylor v. Cain*, 545 F.3d 327 (5th Cir. 2008) (a confrontation clause case granting habeas relief because the admission of hearsay evidence was not harmless), the facts differ significantly in material respects. Like this case, a single eyewitness placed the defendant at the crime scene, no physical evidence linked the defendant to the crime, there was no corroboration of the eyewitness testimony from anyone who testified at trial, and inadmissible hearsay was heard by the jury. 545 F.3d at 335-37. In contrast, however, the testifying eyewitness in *Taylor* was "markedly indefinite" in his identity of the shooter at trial, his girlfriend provided testimony that cast doubt on the veracity of his identification, and the alleged shooter had three alibi witnesses who corroborated that he was in the shower at the time of the shooting. *See id.* at 329-30, 336. While the alibi witnesses were certainly of questionable credibility given that they were family members of the petitioner, the doubts about their credibility do "not add to the limited evidence of guilt." *Id.* at 337. The *Taylor* case also lacked other indicators of guilt that are present in this case – flight from jurisdiction while on bond pending trial and denial of knowledge of the murder until informed that witnesses placed him at the scene.

appellate decision did not affirmatively or implicitly accept the conclusion that petitioner was prejudiced. *See Ex parte Huerta*, No. 65,324-01, 2007 WL 4139233, at *1-5 (Tex. Crim. App. Nov. 21, 2007) (per curiam). Moreover, because a conclusion of prejudice is a mixed question of law and fact which is not entitled to a presumption of correctness, *Jordan v. Dretke*, 416 F.3d 363, 370 (5th Cir. 2005); *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995), the prejudice conclusion would be subject to review even had the state appellate court affirmatively accepted the conclusion.

Based on totality of the evidence, the decision to deny habeas relief on this claim is a "satisfactory conclusion" that does not warrant federal habeas relief. *See Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004). AEDPA requires the federal courts to review the ultimate decision of the state court for reasonableness, not every aspect of its reasoning. *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001); *accord Morrow*, 367 F.3d at 314. Although petitioner argues that the decision is an unreasonable determination of the facts and an unreasonable application of clearly established law to those facts (Mem. Supp. at 28-29), the state appellate court reasonably determined the facts based on the evidence presented, and the conclusion of the Texas Court of Criminal Appeals is not an unreasonable application of Supreme Court precedent.[10] Consequently, petitioner is entitled to no relief on this claim.

## B. **Failure to Investigate**

Petitioner also claims his attorney failed to inadequately investigate the basis for the eyewitness identification, including the procedures for the compilation of and use of a lineup. (Pet. at 8 and attached page; Mem. Supp. at 8, 15-17.)

A decision not to investigate must be assessed for reasonableness under the circumstances,

---

[10] Although petitioner does not argue that the decision is contrary to Supreme Court precedent, it should be noted that the state decision to deny habeas relief is not contrary to such precedent.

with heavy deference to counsel's judgments. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "So long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." *Cotton v. Cockrell*, 343 F.3d 746, 752 (5th Cir. 2003) (quoting *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002)). To show prejudice from an alleged failure to investigate, a movant "must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of the proceeding. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

The Texas Court of Criminal Appeals focused on the alleged failure to consult with or present an eyewitness expert rather than the more general failure to investigate, but it implicitly found no ineffective assistance from the failure to investigate when it denied habeas relief. *See Ex parte Huerta*, No. 65,324-01, 2007 WL 4139233, at *1-3 (Tex. Crim. App. Nov. 21, 2007) (per curiam). The state disposition of the failure to investigate claim appears consistent with *Strickland*. Petitioner has shown no reasonable probability that the outcome of his trial would have differed but for counsel's failure to investigate, or that the alleged failure rendered the jury verdict unreliable or the trial fundamentally unfair. It appears that the state appellate court reasonably determined the facts based on the evidence presented, and its conclusion that there was no ineffective assistance of counsel is not an unreasonable application of Supreme Court precedent. Consequently, petitioner is entitled to no relief on this claim.

## C. **Failure to Consult or Present Expert**

Petitioner lastly claims that his attorney was ineffective for failure to consult with or present an identification expert. (Pet. at 8 and attached page; Mem. Supp. at 8, 15-17.)

The Texas Court of Criminal Appeals concluded that the alleged failure to consult with or

14

present an eyewitness expert did not constitute ineffective assistance. *See Ex parte Huerta*, No. 65,324-01, 2007 WL 4139233, at *1-3 (Tex. Crim. App. Nov. 21, 2007) (per curiam). It found that counsel's actions were a matter of trial strategy, and it considered the costs associated with such consultations and retention in making that finding. *Id.* at *3. This Court cannot disturb this factual finding related to counsel's trial strategy in the absence of clear and convincing evidence. *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999); 28 U.S.C. § 2254(e).

Petitioner presents no specific arguments about counsel's strategy but complains that the court manufactured new facts not contained within the record, *i.e.*, anticipated cost of expert, disregarded the developed evidentiary record in favor of the new facts, justified the actions of counsel based upon an explanation not proffered at the evidentiary hearing, and implicitly substituted its credibility determination for that of the trial court. (*See* Mem. Supp. at 15-17, 30-37.) Appellate courts are free to make their own factual determinations on habeas review, however. *See Sumner v. Mata*, 449 U.S. 539, 547 (1981) (recognizing that presumption accorded to findings of fact inures to findings of appellate courts as well as the lower courts). Courts may take judicial notice of matters of common knowledge, *see Hamling v. United States*, 418 U.S. 87, 147 n.3 (1974), such as the costs of consulting or hiring a trial expert. Petitioner has presented no clear and convincing evidence to overcome the presumption of correctness of the appellate court's factual finding that the decision to forego consulting with or hiring an eyewitness expert was a matter of trial strategy.

As noted above, the reasonableness of counsel's trial strategy is a question of law. *Moore*, 194 F.3d at 604. Petitioner has not shown that counsel's strategy to forego such an expert was so ill-chosen as to make his trial unfair. Counsel explained that he chose to forego consulting with or

15

retaining an eyewitness expert because he (1) had read literature regarding eyewitness identification; (2) had opportunities to work with experts on that issue; (3) was familiar with the factors relevant to such identification, such as "opportunity to observe, adequate view, accuracy of description, degree of attention, lack of emotional state, prior misidentification, level of certainty, [and] elapsed time"; and (4) had recently hired an expert on eyewitness identification without success. W.H. Tr. at 19-21. He also stated that in his personal experience, an expert would not be helpful in fully developing the lineup procedures. *Id.* at 26. Based on this explanation, which the Texas Court of Criminal Appeals found credible, counsel's decision to forego consulting or retaining an eyewitness expert was reasonable.[11]

Further, although identity was the crucial aspect of this case, a review of the evidence does not show that the failure to present an expert rendered the trial fundamentally unfair.

> The Supreme Court has identified several factors to help determine the likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the crime scene; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Coleman v. Quarterman*, 456 F.3d 537, 544 (5th Cir. 2006) (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). Although significant time elapsed before the eyewitness definitively identified petitioner as the shooter, that fact was well established at trial.[12] Immediately following the murder, the eyewitness gave a detailed description of the shooter, RR-IV at 46, 75, 120, and no one contested the accuracy of that description. Other than the possibility that the eyewitness was intoxicated –

---

[11] Although the appellate court also considered the costs associated with retaining an expert, counsel's strategic decision was reasonable even absent this factor.

[12] At the evidentiary hearing, Malpass conceded that juries "possibly" understand that memory fades rather than improves over time. W.H. at 13.

another matter presented to the jury – nothing suggests that the eyewitness had a limited opportunity to observe the shooter, that his view was obscured or obstructed, or that he was inattentive. The eyewitness positively identified petitioner as the shooter a few weeks before trial while petitioner was in custody.[13] He also identified petitioner in open court based on his memory of the night of the murder. In addition, counsel cross-examined the eyewitness and pointed out the lapse of time between the murder and the trial during summation. Given this evidence, petitioner's trial was not rendered fundamentally unfair by the failure of counsel to present an eyewitness expert.

The state court decision to deny habeas relief on this claim is a satisfactory conclusion which does not warrant federal habeas relief. *See Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004). This Court does not review every aspect of the reasoning for such denial; it instead reviews the ultimate decision of the state court for reasonableness. *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001); *accord Morrow*, 367 F.3d at 314. The ultimate decision to deny habeas relief is reasonable under the circumstances, and petitioner is not entitled to relief on this claim.

## IV. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## V. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

---

[13] Notably, although Malpass indicated that the record implies that the eyewitness's in-court identification was "infected by suggestive feedback" and "improper enhancement of his memory", W.H. at 11, counsel did not recall that the eyewitness had been given feedback *id.* at 57-58, and the actual relevant testimony from the eyewitness was that he told the detective that he had identified the shooter, not that the detective gave any suggestive feedback after the eyewitness's identification, *see* RR-IV at 97-98.

17

**SIGNED this 15th day of May, 2009.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE